METCALFE, J.
The plaintiff in error was arrested upon a complaint made before the mayor of New Alexandria, charging him with keeping a place where intoxicating liquors were unlawfully sold in violation of law, and upon trial before the mayor was convicted.
The plaintiff urges the following errors. First, that the mayor was so prejudiced he could not give the plaintiff a fair trial. Second, that the mayor had no jurisdiction. Third, that the plaintiff had the right of a trial by jury, and fourth, that there was no law in force making the sale of liquors unlawful within the state of Ohio at the time the alleged offense was committed, and consequently there could be no prosecution for keeping a place where liquors are sold contrary to law.
As to the first proposition, an affidavit was filed by the plaintiff in which, after stating the circumstances of his arrest, he avers that the mayor had stated in court at some time, not at the time he was upon trial, that persons who were brought before him and who pleaded “Guilty” would be fined $300, and that those who stood trial would be fined $500; thus, giving notice to those who were brought before him charged with a crime they would be convicted in any event, and if they stood trial that they would receive a much more severe punishment than if they pleaded “Guilty.” Of course, this statement, if made, was exceedingly improper, and if there was anything in the record to show that that attitude of the mayor was carried into this case, it would reverse the case undoubtedly, but we do not find that it worked to the prejudice of the plaintiff, for upon the undisputed evidence in the case it was the duty of the mayor to convict him.
As to the question of the jurisdiction of the mayor to try this case without the intervention of a jury Sec. 4536 gives to the mayor authority co-extensive with the county, to try cases of misdemeanor where the penalty is by fine only.
In the case of Inwood v. State, 42 Ohio St. 186, the Supreme Court held in cases of prosecutions for misdemeanors where the punishment was by fine only that the defendant did not have a constitutional right to a trial by jury.
In Cincinnati v. Steinkamp, 54 Ohio St. 284, 290 [43 N. E. 490], the case is cited with approval and in Kinsel, In re, 64 *451 Kans. 5 [67 Pac. 634; 56 L. R. A. 475], the case is discussed and followed.
The same question was before the Kansas court as in the In-wood case. The Inwood case is expressly followed in State v. Smith, 69 Ohio St. 196 [68 N. E. 1044], and is cited as determining that question authoratively in State v. Borhmn, 72 Ohio St. 358 [74 N. E. 220]. So, we think'that question is not an open question now.
The only remaining question in this case as to whether there was a law in force which made the sale of intoxicating liquors at the time the acts charged in this affidavit were committed, unlawful.
Section 13195 provides:
“Whoever keeps a place where intoxicating liquors are sold, furnished or given away in violation of- law, shall be fined, etc. ’ ’
This act is charged to have taken place on October 9, 1919, subsequent to May 26, 1919, when the prohibition amendment to our constitution went into effect. It is insisted that by virtue of that amendment the existing laws relating to the sale of intoxicating liquors were repealed.
Article 15, Sec. 9, prohibits the manufacture and sale of intoxicating liquors and reads as follows:
“The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The general assembly shall enact laws to make this provision effective. Nothing herein contained shall prevent the manufacture or sale of such liquors for medicinal, industrial, scientific, sacramental, or other non-beverage purposes. ’ ’
At the time that the acts charged in this affidavit were committed, it is said that there was no law in effect providing penalties for the sale of intoxicating liquor. No law has been passed that was effective, at least, to carry into effect the provisions of the prohibition amendment, and probably most of the legislation relating to the sale of intoxicating liquors which was upon the statute books, was repealed or at least became inoperative when the prohibition section went into effect.
But, would the constitutional amendment repeal a law which was not in any way obnoxious to any of its provisions? That *452 section was in effect before the constitutional amendment was passed. But the amendment does not expressly or by implication repeal it. If it repealed any laws at all, it would be only such as were obnoxious to its provisions or such laws as it was designed to do away with like the various local option laws, but, would it repeal a law which imposed a penalty for keeping a place where intoxicating liquors were unlawfully sold? We think not.
It is insisted that the laws passed by the general assembly at that time imposing penalties for sales of intoxicating liquors, were not in force, there could be no ruilawful sale, and consequently the keeping of a place worrld not be unlawful; but does it follow that the sale of intoxicating liquors as a beverage was not unlawful because no penalty was attached to the act of selling it ?
The sale is expressly prohibited by the constitution itself; therefore, it is unlawful. It is true that no penalty attaches to the sale of intoxicating liquors until the legislature has enacted laws which impose a penalty, but that makes no difference with the fact itself that the sale of intoxicating liquors was unlawful. It was unlawful because it was prohibited by the Constitution.
It is not the penalty itself that makes the sale unlawful, but it is unlawful because it is prohibited. The sale itself being unlawful, it follows that keeping a place where intoxicating liquors are sold as a beverage is keeping a place in violation of law, to-wit, in violation of the constitutional provision forbidding it.
Therefore, we think there is no prejudical error in the record in this ease and the judgment is affirmed.
Farr and Pollock, JJ., concur.